## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.  08-81 (ESH)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN ANTHONY, III** | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant's motion to suppress physical evidence and statements.

### Factual Background

The defendant has been charged in a one count indictment with Possessing Material Constituting or Containing Child Pornography, in violation of 18 U.S.C. § 2252A. Specifically, the government alleges that the defendant possessed photos and videos of pre-teen and teen males engaged in sexual activity.

At the time of this offense, defendant John Anthony was on probation in Superior Court case (2006CF1002568) for having sex with a minor. As part of his probation, he is required to undergo sex offender treatment (which often involves polygraph exams), and to "allow at any time search of any computer or computer related equipment owned or possessed by defendant." See April 30, 2007 Amended Judgment in case 2006 CF1 2568, attached hereto as Exhibit A. On October 5, 2007, the defendant submitted to a polygraph test. The results were provided to Community Supervision Officer ("CSO") Pamela Spivey. Upon reviewing the test results, CSO Spivey noted that the results were deemed "inconclusive" by the polygraph examiner. As such, CSO Spivey scheduled a conference with the defendant and CSO Spivey's supervisor, Supervisory Community Supervision

Officer ("SCSO") Matthew Kiely. This conference was held on October 10, 2007. During this meeting, the defendant denied viewing any pornography, but admitted that he had access to a computer. After the meeting, CSO Spivey met with the defendant without SCSO Kiely. Upon further inquiry, the defendant admitted that he had viewed child pornography on the computer at his mother's home.

On October 11, 2007, at approximately 7:45 a.m., United States Attorney's Office Criminal Investigator John Marsh accompanied SCSO Kiely[1] to the defendant's mother's home at 10 Halley Place, SE, #104, Washington, DC. Upon arriving at the address, Investigator Marsh and SCSO Kiely met with the defendant's mother, Amanda Anthony. She initially consented to a search of the home and the Gateway computer located therein ("the computer).

Ms. Anthony stated that several of her family members used the computer which was located in a room with a convertible-type sofa, where the defendant sleeps. Ms. Anthony identified the user profile used by the defendant and stated he had his own password for the profile. Ms. Anthony said she did not know the defendant's password.

Investigator Marsh initiated a search of the computer. However, the search was not completed because the software stopped running on files which had "restricted access" within the defendant's user profile. Investigator Marsh explained the problem to Ms. Anthony asked her for permission to take the computer to the United States Attorney's Office Computer Forensic Lab for further investigation. Investigator Marsh told Ms. Anthony that the computer would be returned that

---

[1]    Defendant classifies SCSO Kiely accompanying Investigator Marsh to the Anthony homes as an "extraordinary" step. To the contrary, given defendant's probation conditions, which required him to allow the search of any computer equipment, it was entirely appropriate for SCSO Kiely to accompany Investigator Marsh, as SCSO Kiely's job is to determine if the defendant is in compliance with his conditions of probation.

same day, that investigators would make a copy of the drive and would not change anything about the original state of the hard drive, and that the procedure would enable investigators to view the "restricted access" files. Ms. Anthony refused, stating she would have to speak with her husband first.[2]

Investigator Marsh attempted to contact Ms. Anthony at approximately 12:00 p.m. that same day in order to set up a time to return to conduct a further search with the Helix software and to see if she had contacted her husband. Ms. Anthony did not return Investigator Marsh's calls. Investigator Marsh and his colleague, Investigator Christopher Brophy returned to 10 Halley Place, SE. Ms. Anthony was observed walking out of the residence and Investigators Marsh and Brophy approached her. Ms. Anthony stated she had called the defendant to have him come home and that he had shown her his "My Space" account on the computer. She said there were no pictures of child pornography on the "My Space" account. Investigator Marsh asked if she had spoken with her husband and whether investigators could finish the search. Ms. Anthony stated she did not want the computer searched any further and believed her son when he said there was no child pornography on the computer. She also stated that she believed investigators had already had a chance to search the computer and believed they were only trying to gather evidence to incriminate the defendant.

On October 12, 2007, District of Columbia Superior Court Judge Mary Ellen Albrecht approved a warrant to search 10 Halley Place, SE, #104, Washington, DC. The search warrant was based on the October 12, 2007 affidavit of Inspector Marsh, in which he set forth facts indicating that the defendant had viewed images of child pornography on his home computer.

---

[2]     Ms. Anthony's husband does not reside at 10 Halley Place, SE, #104, Washington, DC.

3

On October 12, 2007, at approximately 6:30 p.m., members of the United States Attorney's Office Criminal Investigation Unit and the Metropolitan Police Department's Internet Crimes Against Children Unit executed a District of Columbia Superior Court search warrant at the Anthony residence. After four attempts to gain entry to the apartment, investigators conducted a forced-entry. Upon entry, investigators encountered the defendant coming out of the rear bedroom with his hands in the air. Investigators recovered the computer, 12 CDs and several pieces of paper documenting passwords and user screen names. Marsh asked the defendant about the users of the computer and he stated he had a separate account under the name of J-Rock, which was password protected. The defendant refused to give investigators his user account password.

Detectives Timothy Palchack and Jonathan Andrews spoke to the defendant. The defendant was advised that he was not under arrest, and that he did not have to provide a statement. Despite these statements, the defendant elected to speak to the detectives, and admitted that he downloaded onto his home computer images of children engaged in sex acts. The defendant said that he could not remember the site he downloaded the images from, and he denied trading these images with anyone.

Investigator Marsh located the J-Rock user account within the computer's "D" Drive, which contained several items of evidence. The "shared" folder is a unique folder created by file sharing software Lime Wire within the J-Rock user account. The shared folder contained 11 images of suspected child pornography which were forwarded to the National Center for Missing and Exploited Children for analysis and review. One of the images, Brian3.jpg, was identified as a known victim of child sex abuse. The Brian3.jpg image depicts a nude male, approximately eleven years-old, being anally penetrated by an adult male. The other images depict nude preteen males displaying

4

their genitals. The shared folder also contained 12 video files depicting pre-teen and teen males engaged in anal and oral sexual activity.   Of these video files, three were identified as known victims of child sexual abuse.  One of the videos lasts over 30 minutes, and contains video of a preteen boy hog-tied and forced to provide oral sex to an adult male.

Investigator Marsh reviewed the "Lost Files" folder recovered by the Encase software as once-deleted files from the computer.   Forensic analysis revealed that on October 10, 2007, the J-Rock user deleted 747 files from the computer.  Furthermore, on October 12, 2007, between 1:27 pm and 5:31 pm, the J-Rock user deleted approximately 2955 files.  These files include the child pornography images and video files described above, as well as additional images of naked preteens.

### SEARCH WARRANT

Defendant alleges that 1) the police didn't receive consent to conduct a search of either the apartment or the vehicle;[3] 2) the affidavit in support of the search warrant did not establish probable cause for a search of the defendant's computer; 3) the good faith exception of United States v. Leon does not apply, and 4) any and all statements made by the defendant were made involuntarily and taken in violation of Miranda.  The government addresses each of these allegations below.

1.    Investigator Marsh received consent to conduct the search.

The defendant argues that law enforcement did not obtain consent to search the computer, yet in the next breath argues that if law enforcement did receive consent from the defendant's mother, she did not have the right, authority, or interest to grant consent, and the consent was not given freely or voluntarily.  As a preliminary matter, the government notes that the images on the

---

[3]    Law enforcement did not search seek permission to search, nor did they search, any vehicle related to this case.

computer which led to the pending criminal charges were discovered *after* law enforcement had received and executed a valid search warrant.

At the time of the search, the defendant lived with his mother, Amanda Anthony, at her home at 10 Halley Place, SE, #104, Washington, DC. The defendant was not at home when Investigator Marsh and SCSO Kiely arrived to search the computer. Ms. Anthony was at home, and she signed a consent form, indicating that she "freely and voluntarily" permitted a search of "all computers." See Search Consent Form, attached hereto as Exhibit B.

Police may search places and seize items without a warrant and without probable cause if given voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). No Fourth Amendment violation occurs merely because police have approached citizens, have asked questions, have asked to examine identification, and have asked for consent to search. Florida v. Bostick, 501 U.S. 429, 434 (1991); United States v. Lewis, 921 F.2d 1294 (D.C. Cir. 1990). The government bears the burden of showing voluntary consent by a preponderance of the evidence. United States v. Mendenhall, 446 U.S. 544 (1980).

In determining whether a consent is voluntary, this Court should assess "the totality of all the surrounding circumstances," including the characteristics of the accused and the details of the interaction between the police and the consenting party. Schneckloth, 412 U.S. at 226. While "there is no talismanic definition" of voluntariness, United States v. Hall, 969 F.2d 1102, 1106 (D.C. Cir. 1992), the Court must ultimately determine whether the consent was "the product of an essentially free and unconstrained choice by its maker." Schneckloth, 412 U.S. at 225.

As the defendant himself points out, a search does not violate the Fourth Amendment where police obtain consent to search from one who possesses common authority over the premises with

the absent non-consenting target of the search.  United States v. Mattock, 415 U.S. 164 (1974). Here, that is exactly what happened.  Ms. Anthony had common authority over both the premises and the computer.  Indeed, she has a password and a user i.d. for the computer.

A review of the totality of the circumstances in this case amply demonstrates that Ms. Anthony voluntarily consented to the search of the computer. The inquiry begins with the conduct of law enforcement towards her.  Investigator Marsh and SCSO Kiely advised Ms. Anthony of their reason for wishing to search the computer.  Ms. Anthony, being fully aware of the situation,  then gave both verbal and written consent for the search.  (The written consent 'form' thoroughly documents not only the subject matter of the search but the search address, the owner's name, the time of the search, and the owner's signature.).  Ms. Anthony is educated and articulate.  She can read and write, and she has a full-time job.  English is her first language.  She was advised of the situation.  Indeed, this assessment is supported by the fact that when Investigator Marsh asked if he could remove the computer from the home, Ms. Anthony withdrew her consent, and refused to permit Investigator Marsh to take the computer.  Thus, a review of the details of this case supports the conclusion that this was a noncoercive encounter.

As noted above, in Matlock the Court held that consent can be obtained from a third party with "common authority" over the property. 415 U.S. 164.  The Court took this proposition one step further stating that the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared.  Id.  (See also Wright v. United States, 608 A.2d 763 (D.C. App. 1992) in which the Court stated that third party consent is based upon the 'common authority' or other sufficient relationship to the premises or effects sought to be inspected.)  Such warrantless entry based upon third party consent is valid

7

where, at the time of entry, officers reasonably believed that the third party possessed common authority over premises, even if it becomes apparent later that actual authority to consent did not exist. United States v. Duran, 884 F.Supp. 548 (D.C. 1995); Illinois v. Rodriguez, 497 U.S. 177, 186-88, (1990).

Therefore, based upon "careful scrutiny of all the surrounding circumstances," Schneckloth, 412 U.S. at 226, Ms. Anthony had the power to consent to a search of the home and the computer, she gave such consent, and this consent was given voluntarily.

      2.    The affidavit in support of the search warrant established probable cause for a search of the defendant's computer.

The defendant alleges that Investigator Marsh made an uncorroborated, unfounded, and generalized conclusion in his affidavit that did not establish probable cause. The facts of the case do not support defendant's assertion in the least. Investigator Marsh has extensive experience investigating internet crimes against children, and his assertion that there was child pornography located on the computer was supported by both the defendant's admissions, and by Investigator Marsh's experience with other collectors of child pornography. Defendant further alleges that Investigator Marsh conducted a complete search of the defendant's computer, and did not come across any child pornography. However, that assertion is false. Indeed, on page 3 of the affidavit in support of the search warrant (which is attached hereto as exhibit C), Investigator Marsh states "[t]he search *was not able to be completed* because the software stopped running on files which had 'restricted access' within John Anthony's user profile."[4] (emphasis added). As such, the affidavit

---

[4]    Even assuming, *arguendo*, that defendant alleged the affidavit included false statements, the test to be applied in determining whether the defendant is entitled to an evidentiary hearing on the issue of the alleged falsity of the statements in the affidavit, or whether statements proven to be untrue invalidate the warrant, is the same. There is a "presumption of validity" attached

makes it very clear that Investigator Marsh was unable to complete the search of the computer, which is why he sought to remove it from the premises. And, in fact, when Investigator Marsh was finally able to conduct a complete and thorough search of the computer, he found images of child pornography.

      3.      <u>The good faith exception of United States v. Leon applies.</u>

Rule 41(c) of the of the Federal Rules of Criminal Procedure states that a search warrant may issue upon an affidavit subscribed and sworn before a federal magistrate judge and reflecting probable cause to find, among other things, evidence of a crime, contraband, fruits of a crime, or property used in committing a crime. Fed. R. Crim. P. 41(c)(1)-(3). The affidavit in this case established ample probable cause sufficient to support the warrant.

The defendant is not entitled to an evidentiary hearing on his motion. It is well established that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his [or her] judgment that the form of the warrant is technically sufficient." <u>United States v. Leon</u>, 468 U.S. 897, 921 (1984). Controlling case law in this Circuit clearly establishes that where the warrant describes with particularity the place to be searched and the items to be seized, unless there is evidence of misconduct on the part of the officer applying for or executing the search warrant, courts in this District will apply the <u>Leon</u> good faith exception.

---

to such affidavits. <u>Franks v. Delaware</u>, 438 U.S. 154, 155-157 (1978). Moreover, a defendant must both make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and show that "the allegedly false statement is necessary to the finding of probable cause." <u>Id.</u> at 155-56; <u>United States v. Richardson</u>, 861 F.2d 291, 293 (D.C. Cir. 1998). <u>See</u> <u>also</u> <u>United States v. Davis</u>, 617 F.2d 677, 694 (1979) (a defendant must make a substantial showing that the affiant deliberately falsified information in the warrant or "in fact entertained serious doubts as to the truth" of the information).

United States v. Singh, 973 F. Supp. 7, 13 (D.D.C. 1997); United States v. Pelham, 749 F. Supp. 304, 309 n.6 (D.D.C. 1990).

Accordingly, suppression of evidence obtained pursuant to a search warrant later determined to be deficient is unwarranted if officers acted with "objective good faith" in obtaining and executing the warrant. Leon, 468 U.S. at 920- 21. This "good faith" exception is inapplicable only "if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 926. See also United States v. Salamanca, 990 F.2d 629, 634 (D.C. Cir. 1993) ("even if [warrant] affidavit did not sufficiently establish a finding of probable cause, the executing officers justifiably relied in good faith on the magistrate's determination that probable cause existed"); United States v. Maxwell, 920 F.2d 1028, 1034 (D.C. Cir. 1990) (same); United States v. Thornton, 746 F.2d 39, 51 (D.C. Cir. 1984) (same).

Moreover, examining the facts included in the affidavit in a practical, common sense fashion, it was reasonable for the magistrate judge to conclude that evidence of criminal activity would be found in defendant's residence.

4.    The defendant's statements were made knowingly and voluntarily, and did not violate Miranda.

Defendant argues that his statements to SCSO Kiely and CSO Spivey should be suppressed because they were made in violation of Miranda v. Arizona, 384 U.S. 436 (1966). This argument is similarly without merit, and should be denied. Under Miranda, custodial interrogation automatically triggers numerous procedural safeguards to protect an individual's Fifth Amendment right against compulsory self-incrimination. As explained in Miranda, custodial interrogation refers to "questioning initiated by law enforcement officers after a person has been taken into custody or

10

otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444. The Court has stressed that these safeguards come into play only when the defendant is subject to <u>both</u> custody and interrogation. <u>Rhode Island v. Innis</u>, 446 U.S. 291, 297 (1980); <u>Beckwith v. United States</u>, 425 U.S. 341, 347 (1975). The defendant was clearly not in custody when he spoke to the CSOSA representatives.

Nor was the defendant in custody when he spoke with Detectives Palchak and Andrews. In fact, Detective Palchak advised the defendant that he was not under arrest, and that he did not have to provide a statement. The defendant was in his own home when he spoke to the detectives, and he was not handcuffed. The defendant received his GED in March of 2007, and he had prior experience with law enforcement, as evidenced by his prior criminal conviction. There is no indication that the defendant did not understand the detectives, nor does his motion provide any basis for his assertion that his statements were involuntary.

The test for whether a statement is voluntary for purposes of due process is whether the statement is "the product of an essentially free and unconstrained choice by its maker." <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 225-26 (1973) (citing <u>Columbe v. Connecticut</u>, 367 U.S. 568, 602 (1961)). For a statement to be involuntary, it must have been caused by government overreaching. <u>Colorado v. Connelly</u>, 479 U.S. 157, 163-64 (1986) ("[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law"); <u>Martin v. United States</u>, 567 A.2d 896, 908 (D.C. 1989) ("[w]ithout a showing of coercive police activity . . . there is not a basis for concluding that [the defendant's] confession was involuntary") (internal quotations omitted).

There is absolutely no indication of any coercive police activity in this case. As indicated above, the detectives scrupulously followed the dictates of <u>Miranda</u>. The defendant was not threatened or mistreated in any way during the encounter. Testimony at a pre-trial hearing in this case will demonstrate that under the totality of the circumstances, the defendant's statements were made voluntarily and his will was not overborne. <u>Lego v. Twomey</u>, 404 U.S. 477, 489 (1972) (government has burden of establishing by preponderance of the evidence that the confession was voluntary); <u>see also</u> <u>Rogers v. Richmond</u>, 365 U.S. 534, 544 (1961) (government conduct must be "such as to overbear [a suspect's] will to resist and bring about confessions not freely self-determined"); <u>see</u>, <u>e.g.</u>, <u>United States v. Leon Guerrero</u>, 847 F.2d 1363 (9th Cir. 1988) (promises that cooperation would be communicated to prosecutors insufficient to overcome will); <u>United States v. Yunis</u>, 859 F.2d 953, 961 (D.C. Cir. 1988) (defendant's seasickness, his uncomfortably hot room, and his unfamiliarity with American legal culture not a legally adequate basis for concluding that confession was involuntary); <u>United States v. Pelton</u>, 835 F.2d 1067 (4th Cir. 1987) (FBI agent's assertion that FBI would launch full-scale investigation if defendant did not cooperate not sufficient to render statements involuntary). Accordingly, the defendant's motion to suppress statements should be denied.

WHEREFORE, for the reasons stated above, the United States respectfully requests that this

Honorable Court deny the defendant's motion to suppress evidence and statements.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

Catherine K. Connelly
Catherine K. Connelly
Assistant United States Attorney
Mass.  Bar No. 649430
555 4th Street, N.W.  #4844
Washington, DC 20001
202-616-3384

13

# Exhibit A

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

United States of America

v.

JOHN ANTHONY

JUDGMENT IN A CRIMINAL CASE

Case Number: 2006 CF1 2568

PDID No. 564-977

*Amended*

## THE DEFENDANT:

☒ ENTERED A PLEA OF GUILTY TO COUNT (S) 1

☐ WAS FOUND GUILTY ON COUNT (S) _____
AFTER A PLEA OF NOT GUILTY.

| Count | Nature of Charges | Title & Section | Date of Offense |
|-------|-------------------|-----------------|-----------------|
| Count 1 | Attempt 1st Degree Child Sex Abuse | 22-4118 | 11/1/2005 |

## SENTENCE OF THE COURT

SIXTY (60) MONTHS IN JAIL, TEN (10) YEARS SUPERVISED RELEASE, EXECUTION OF SENTENCE
SUSPENDED ALL BUT SIX (6) MONTHS
SUPERVISED PROBATION THREE (3) YEARS

☒ The defendant is hereby committed to the custody of the Attorney General to be imprisoned for a total term of:
SIX (6) MONTHS  ☐ MANDATORY MINIMUM term of _____ applies.

☐ Upon release from imprisonment, the defendant shall be on supervised release for a term of _____

CREDIT FOR TIME SERVED,

☒ The Court makes the following recommendations to the Bureau of Prisons:

☒ The Defendant is also ordered placed on probation - See page 2 of this order for conditions of probation

Costs in the aggregate amount of $ 100.00 _____ have been assessed under the Victims of Violent Crime Compensation
Act of 1996, and ☒ have  ☐ have not been paid.

April 30, 2007
Date

*Wendell P. Gardner*
Judge

WENDELL P. GARDNER JR Associate Judge
Name and Title of Judicial Officer

Certification by Clerk pursuant to Criminal Rule 32(d)

April 30, 2007
Date

PAMELA D. BOYD
Deputy Clerk

NUNC PRO TUNC to 12/5/06

DEFENDANT: <u>JOHN ANTHONY</u>

CASE NUMBER: <u>2006 CFI 2568</u>

Judgment Page <u>2</u>    of <u>2</u>

## PROBATION

The defendant is hereby placed on a probation for a term of     <u>THREE (3) YEARS</u>

# GENERAL CONDITIONS OF PROBATION

1. Obey all laws, ordinances and regulations.

2. Keep all appointments with your Community Supervision Officer (CSO).

3. Permit your CSO to visit your place of residence.

4. Abstain from the use of hallucinatory or other drugs, and submit to drug testing, as directed by your CSO.

5. In the event of illicit drug use or other violation of conditions of probation, you will participate as directed by your CSO, in a program of graduated sanctions that may include brief periods of residential treatment.

6. Notify your CSO within 24 hours if you change your residence.

7. Obtain the permission of your CSO before you relocate from the District of Columbia.

8. Participate and complete CSOSA's employment/academic program, if directed by your CSO.

9. Participate and complete other CSOSA Programs as identified through CSOSA Program Screener Assessment

# SPECIAL CONDITIONS OF PROBATION

1. ☒ Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with written notice from your Probation Officer.

2. Treatment for  ☒ alcohol problems  ☒ drug dependency or abuse as follows:

<u>EDUCATION AND TREATMENT</u>

3. Restitution of $ ——————— in monthly installments of $ ——————— beginning ———————

    ☐  The court will distribute monies to ———————————————————

4. Other conditions:    DEFENDANT TO ADHERE TO INTERVENTION PLAN AT THE DISCRETION OF CSOSA SEX OFFENDER UNIT AND ANY OTHER REQUIREMENTS CSOSA (SEX OFFENDER UNIT) DEEMS APPROPRIATE
*AMENDMENT- COMPUTER EQUIPMENT AND ONLINE/NETWORK SERVICES SPECIAL SEARCH CONDITION TO ALLOW AT ANY TIME SEARCH OF ANY COMPUTER OR COMPUTER RELATED EQUIPMENT OWNED OR POSSESSED BY DEFENDANT



# Exhibit B



**Court Services and Offender Supervision Agency**
**for the District of Columbia**

*Community Supervision Services*
*General/Special Supervision Branch, VII*

**Search Consent Form**

_____10-11-07_____
Date

I, _____Amanda Anthony_____, have been asked by representatives from Court Services and Offender Supervision Agency (CSOSA) to permit a complete search by CSOSA or its designees of any and all computers, any electronic and/or optical data storage and/or retrieval system or medium, and any related computer peripherals described below:

_____
CPU Make, Model & Serial Number (if available)

_____
Storage or Retrieval Media, Computer Peripherals (i.e. Cells Phones, PDAs etc.)

and located at ___10 Halley Place S.E. Apt# 104 Washington, D.C.___, which I own, possess, control, and/or have access to, for any evidence of a violation or probation concerning John Anthony. The required passwords, logins, and/or specific directions for computer entry are as follows:

_N/A_____

_____

        I have been advised of my right to refuse to consent to this search, and I give permission for this search freely and voluntarily, and not as the result of threats or promises of any kind.

        I authorize these representatives to take any evidence discovered during this search, together with the medium in/on which it is stored, and any associated data, hardware, software and computer peripherals.

        I have been fully informed of my right to refuse. Lastly, I understand my consent can be withdrawn at any time.

Owner's Printed Name: _Amanda Anthony_    Owner's Signature _Amanda Anthony_
SCSO's/CSO's Printed Name: _M. Kith_    SCSO's/CSO's Signature: _M g_
Printed Name (Witness): _____    Signature of Witness: _____

7:45am  Location: _10 Halley Place S.E.__ #104    Time Search Ended: _9:15_
If Refused: _____    _____    Date:_____
                Print Name                      Signature

*300 Indiana Avenue, NW, Washington, DC 20001*
*Voice: (202) 585-7350  Fax: (202) 585-7554*

# Exhibit C

**SEARCH WARRANT**

**TO:**    **Chief of Police or any Authorized Agent Thereof**

_____
(Specific Law Enforcement Officer or Classification of Officer of the Metropolitan Police Department or other Authorized Agency)

Affidavit, herewith attached, having been made before me by    **Investigator John Marsh USAO #103**
_____
that he has probable cause to believe

that on the [ ]person [ x ]premises [ ]vehicle [x ]object, known as _____

The residence located at #10 Halley Place SE, #104 for a Gateway laptop computer Serial Number
GCV7221027795
_____

in the District of Columbia, there is now being concealed certain property, namely _____
Evidence of possession of child pornography to include property, digital files, records and photographs stored on
computer files as more fully detailed in the attached affidavit.
_____
_____

which is    In violation of the terms of supervised release in 2006CF1002568(First Degree Child Sex Abuse)    and as I am satisified
                                        (Alleged grounds for seizure)

that there is probable cause to believe that the property so described is being concealed on the above designated
[ ] person  [x ]premises  [ ]vehicle  [x ]object, and that the foregoing grounds for issuance of the warrant exist.

   **YOU ARE HEREBY AUTHORIZED** within 10 days of the date of issuance of this warrant to search in the
daytime/~~at any time of the day or night~~, the designated [ ]person  [x ]premises  [ ]vehicle  [x]object, for the
property specified and if the property be found there.

   **YOU ARE COMMANDED TO SEIZE IT, TO WRITE AND SUBSCRIBE** in an inventory of the property seized, to leave a copy of this
warrant and return to file. a further copy of this warrant and return with the Court on  the next Court day after its execution.

**Issued this**  _12th_ **day of**  _October_ , 20 _07_         _Mary Ellen Abrecht_
                                                         Judge, Superior Court of the District of Columbia

===============================================================================
**RETURN**

I received the above detailed warrant on    _10-12-07_ , 20 _____  and have executed it as
On  _10-12-07_ , 20 _____ , at  _1820_       [ ]AM [ ]PM. I searched the
the [ ]person [ ]premises [ ]vehicles [ ]object, described in the warrant  and I left a copy of the warrant and
_John Anthony_                                                     **properly posted.**
(Name of person searched or owner, occupant, custodian or person present at place of search)

The following is an inventory of the property taken pursuant to this warrant:
_One Gateway laptop computer_
_(12) CDs_
_Papers with computer user names and passwords, paperwork_
_showing proof of ownership_
_____
_____

This inventory was made in the presence of   _John Marsh, Chris Bagby, Jim Padchak_
_____
**I swear that this is a true and detailed account of all property taken by me under this warrant.**

                                                         Executing Officer
**Subscribed and sworn to before**  _19th_ **day**  _October_    _____ 200_7_

                                                         _____
                                                         Judge, Superior Court of the District of Columbia

Form CD -1055 / Apr. 00

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

SEARCH WARRANT FOR THE FOLLOWING COMPUTER EQUIPMENT located within #10 Halley Place SE, Apartment #104, which is one Gateway computer, serial number GCV7221027795.

Your affiant is John Edward Marsh, a criminal investigator, assigned to the United States Attorney's Office. Your affiant has approximately twenty years law enforcement experience, including twenty years service with the United States Park Police reaching the rank of Detective Sergeant. Your affiant has participated in over 2000 arrests and been involved in numerous investigations of violent crimes and narcotics trafficking. Your affiant has also received training in and investigated computer-based crimes.

Your affiant received a case request to assist in the investigation of possession of child pornography there is contraband, that is child pornography which is illegally possessed in violation of the terms of his supervised release in criminal case number 2006CF1002568 (First Degree Child Sexual Abuse) in which the defendant is John Anthony III, PDID #564977.

Your affiant learned from CSOSA representatives that John Anthony is undergoing intensive supervision with the sex offenders supervision unit following his plea and sentencing in a first degree child sexual abuse case. Anthony told his case officer, CSO Spivey that he has viewed images of child pornography on his home computer within the last five weeks.

On 10-11-07 at approximately 0745, your affiant assisted SCSO Matthew Kiely (CSOSA) conduct a computer search at 10 Halley Place SE #104. Marsh used Helix v1.8 software to conduct a search of a Gateway desktop computer in the residence used by John Anthony. Investigators met with John Anthony's mother, Amanda Anthony, at the residence and she initially consented to the search.

Ms. Anthony stated several of her family members used the computer which was located in a room with a convertible-type sofa, where her son sleeps. Ms Anthony identified the user profile used by her son John and stated he had his own password for the profile which she did not know.

Marsh ran the Helix software from the boot CD and located three images of John Anthony in a "My Space" folder and an image of a nude black male torso which was cropped to show the body from the shoulders down. Ms. Anthony viewed the image and said it was not her son based on the physical characteristics of the body. The photos of John Anthony appeared to be those that would be uploaded onto a "My Space" profile. The search was not able to be completed because the software stopped running on files which had "restricted access," within John Anthony's user profile.

1 of 3

Marsh explained the problem to Ms. Anthony asked her for permission to take the computer to the United States Attorney's Office Computer Forensic Lab for further investigation. Marsh told Ms. Anthony that the computer would be returned that same day, that investigators would make a copy of the drive and would not change anything about the original state of the hard drive and that the procedure would enable investigators to view the "restricted access" files. Ms. Anthony refused stating she would have to speak with her husband first.

Marsh attempted to contact Ms. Anthony at approximately 1200 hours to return to conduct a further search with the Helix software and to see if she had contacted her husband. Ms. Anthony did not return calls to Marsh. Marsh and another investigator, Christopher Brophy, waited for a short time at her residence. Ms. Anthony was then observed walking out of the residence and Marsh and Brophy approached her. Ms. Anthony stated she had called her son to have him come home and that he had shown her his "My Space" account on the computer. She said there were no pictures of child pornography on the "My Space" account. Marsh asked if she had spoken with her husband and whether investigators could finish the search. Ms. Anthony stated she did not want the computer searched any further and believed her son when he said there was no child pornography on the computer. She believed investigators had already had a chance to search the computer and believed we were only trying to gather evidence to incriminate him.

Your affiant knows through the investigation of child pornography possession cases that possessors often buy online services using email and keep records of the their passwords and files downloaded on their computers digital in form.

Based on the foregoing facts and information, there is probable cause to believe that within the #10 Halley Place SE, Apartment 104, which is one Gateway computer, serial number GCV7221027795, there is contraband, that is child pornography which is illegally possessed in violation of the terms of his supervised release in criminal case number 2006CF1002568 (First Degree Child Sexual Abuse). Your affiant respectfully requests that a D.C Superior Court Search Warrant be issued for the listed computer for the seizure of the following items:

Files, records, photographs or any other digital media relating to possession of child pornography. These may be secreted in ccomputer software consisting of digital information, which can be interpreted, by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs. Any files, photographs or other records created by these programs.

Computer-related documentation consisting of written, recorded, printed, or electronically stored material, which explains or illustrates how to configure or use the computer hardware, software, or other related items.

Computer passwords and other data security devices that are designated to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital codes may include programming code that creates "test" keys or "hot" keys, which perform user-defined security-related functions when activated. Data security software or code which might also encrypt, compress, hide or "booby-trap" protected data to make it inaccessible or unreadable as well as reverse the process to restore the data.
Logs of electronic communications, disks of communications, hard copies of communications, audio cassette tapes of communications, calendars, appointment books, telephone number lists, incoming and outgoing facsimile messages, and any documentation, telephone records, bank account information or wire transfer information.

The terms "records," "documents," and "materials" include all of the foregoing items of evidence in whatever form and by whatever means such records, documents, or materials, their drafters, or their modifications may have been created or stored, including, but not limited to, any handmade form (such as writing, drawing, painting, with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); any mechanical form (such as tape recordings, cassettes, compact discs, or any information on an electronic or magnetic storage device, such as floppy diskettes, hard disks, zip disks, CD-ROMs, optical discs, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as printouts or readouts from magnetic storage devices).


Affiant, John Edward Marsh
Investigator, United States Attorney's Office

**Subscribed and Sworn Before Me**
**This ___ day of October, 2007.**

**Judge, Superior Court, District**
**of Columbia**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.  08-81 (ESH)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN ANTHONY, III** | : | |
| **Defendant.** | : | |

**<u>ORDER</u>**

Upon consideration of the Defendant's Motion to Suppress Physical Evidence and

Statements, the Government's Opposition thereto, and the record herein, it is this _____ day of

_____, 2008, hereby

ORDERED, that the Defendant's Motion be DENIED.

_____
UNITED STATES DISTRICT JUDGE

copies to:

Catherine K. Connelly
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530

Carlos Vanegas
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004